IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

HERBERT DARRELL HAY,               §
TDCJ-CID NO.263672,                §
          Plaintiff,               §
v.                                 §        CIVIL ACTION NO. H-09-4075
                                   §
RICK THALER, *et al.*,             §
          Defendants.              §

MEMORANDUM AND ORDER ON DISMISSAL

Plaintiff Herbert Darrell Hay, a *pro se* inmate incarcerated in
the Texas Department of Criminal Justice-Correctional Institutions
Division ("TDCJ-CID"), has filed an amended complaint pursuant to
42 U.S.C. § 1983 (Docket Entry No.29), in which he alleges that
defendants violated the Eighth Amendment's prohibition against
cruel and unusual punishment, the Americans with Disabilities Act
("ADA"), and the Rehabilitation Act ("RA").  Plaintiff and all
defendants, except the University of Texas Medical Branch ("UTMB"),
have filed a motion for summary judgment.[1]  (Docket Entries No.34,
No.45, No.46).  For the reasons to follow, the Court will grant
defendants' motion for summary judgment, deny plaintiff's motions
for summary judgment, and dismiss the complaint with prejudice.

I. FACTUAL BACKGROUND AND CLAIMS

Plaintiff is in his early sixties and suffers from several
chronic diseases; he has only twelve teeth.  (Docket Entry No.29,
pages 2, 7, 9).  Plaintiff qualified for dentures under the prison

---

1 UTMB was not served with process and therefore, has not filed an answer.

denture policy in effect in early 2003.[2]   (Docket Entry No.34-4, pages 26, 30-32).   The policy changed in September 2003 and plaintiff was released to parole in 2004, without dentures.   (Id., page 26).   Plaintiff re-entered TDCJ-CID on December 13, 2007, at the Garza West Unit.[3]   (Docket Entry No.46, page 4).

Plaintiff claims that in 2008 and 2009, Jester III Dentist Belvis McBride strictly adhered to two UTMB dental policies, whereby he refused to recommend partial plate dentures for plaintiff and delayed or denied appropriate dental treatment of plaintiff's teeth and gums.   (Docket Entry No.29).   Plaintiff contends that he voiced his complaints about his dental care and the denture policy without success to McBride, TDCJ-CID Director Nathaniel Quarterman, UTMB Assistant Director of Dental Services Billy Horton, and Jester III Practice Manager Susan Dostal.   (Id., pages 5-7).   Plaintiff claims he also unsuccessfully grieved the dental policies and complained that his rights under the ADA had been violated.   (Id.).   He claims he was informed that the only alternative was a blended diet.   (Id.).

Plaintiff seeks declaratory and injunctive relief and monetary damages from defendants McBride, Dostal, and Horton in their

---

2 Plaintiff is serving a twenty-five year sentence in TDCJ-CID from a 2007 conviction in the 338th Criminal District Court of Harris County, Texas for indecency with a child.  Hay v. Thaler, Civil Action No.4:09cv0415 (S.D. Tex. Jan. 6, 2010).  He is also serving a life sentence from a 1976 murder conviction in Kendall County, Texas.  TDCJ-CID Offender Information Detail website at http://168.51.178.33/webapp/TDCJ/InmateDetails.jsp?sidnumber=01254420 (viewed on February 1, 2011).

3 From October 6, 2006, to December 13, 2007, plaintiff was incarcerated in the Harris County Jail, where he had two teeth extracted.  (Docket Entry No.29, page 7).

individual capacities as UTMB employees for their deliberate indifference to his serious medical needs in violation of the Eighth Amendment and violations of the ADA and RA. (Docket Entries No.29, pages 9-12; No.45, page 9, No.46, pages 10-11). Plaintiff seeks declaratory and injunctive relief from Rick Thaler, in his official capacity as successor to Nathaniel Quarterman, and declaratory, injunctive, and monetary relief from UTMB on grounds that he has been denied adequate dental care in practice and policy in violation of the Eighth Amendment and the ADA and RA. (Docket Entries No.45, page 9; No. 46, page 3). He also seeks punitive damages from all defendants except McBride, and an injunction ordering defendants to provide him with dentures. (Docket Entry No.29, pages 12-14).

Defendants McBride, Horton, Dostal, and Thaler assert their entitlement to qualified immunity and Eleventh Amendment immunity. (Docket Entry No.34). They move for summary judgment, and argue that plaintiff has not established a deliberate indifference claim or an ADA and RA claim. (Id.).

Plaintiff also moves for summary judgment. (Docket Entries No.45, No.46). He claims that the record shows that he repeatedly requested medical care for his serious medical needs and that defendants knew of his requests and his need for care and denied, delayed, or provided inadequate treatment for such needs in order "to save costs." (Docket Entry No.45, page 8).

## II. DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." Hamilton v. Seque Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000) (quoting Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994)).

### A. Individual Capacity Claims

### 1. The Americans with Disabilities Act

The ADA is a federal anti-discrimination statute intended to eliminate discrimination against individuals with disabilities. Delano-Pyle v. Victoria County, Texas, 302 F.3d 567, 574 (5th Cir. 2002). Title II of the ADA authorizes suits by private citizens for money damages against public entities that violate 42 U.S.C. § 12132. The rights and remedies available under the ADA are almost

duplicative of those available under the RA.  *See* 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a); <u>Bennett-Nelson v. La. Bd. of Regents</u>, 431 F.3d 448, 455 (5th Cir. 2005).[4]  Title II of the ADA applies to state prison facilities and state prison services.  *See* <u>Pennsylvania Dep't of Corrections v. Yeskey</u>, 524 U.S. 206, 210 (1998).

Although Title II provides disabled persons redress for discrimination by a public entity, it does not, by statutory definition, include individuals.  42 U.S.C. § 12131(1).  Employing a limited construction of the statutory definition of public entity, courts that have addressed the question have concluded that individual defendants cannot be held liable for violation of Title II of the ADA.  *See* <u>Alsbrook v. City of Maumelle</u>, 184 F.3d 999, 1005 & n. 8 (8th Cir. 1999) (en banc); <u>Arlt v. Missouri Dep't of Corrections</u>, 229 F.Supp.2d 938, 942 (E.D. Mo. 2002); <u>Lewis v. New Mexico Dep't of Health</u>, 94 F.Supp.2d 1217, 1230 (D.N.M. 2000); <u>Calloway v. Glassboro Dep't of Police</u>, 89 F.Supp.2d 543, 557 (D.N.J. 2000); *see also* <u>Joseph v. Port of New Orleans</u>, Civil Action No. 99-1622, 2002 WL 342424, at *10 (E.D. La. March 4, 2002) (finding that "[t]he majority of courts that have addressed the issue have held that the ADA does not permit claims against persons

---

4 The Court will consider the plaintiff's ADA and RA claims together, because the two statutes provide parallel remedies.  *See* <u>Hainze v. Richards</u>, 207 F.3d 795, 799 (5th Cir. 2000); 42 U.S.C. § 12133.  "The language in the ADA generally tracks the language set forth in the RA.  In fact, the ADA expressly provides that 'the remedies, procedures and rights' available under the RA are also accessible under the ADA."  <u>Delano-Pyle v. Victoria County, Tex.</u>, 302 F.3d 567, 574 (5th Cir. 2002) (quoting 42 U.S.C. § 12133 (1995)).

in their individual capacities"), *aff'd*, No. 02-30297, 2002 WL 31933280 (5th Cir. Dec. 27, 2002).  Although the Fifth Circuit has not expressly addressed the question of individual liability under Title II of the ADA, it has recognized that a plaintiff cannot sue an individual under the Rehabilitation Act, 29 U.S.C. § 794(a), which provides a comprehensive remedial framework and enforcement provisions similar to the ADA.  *See* Lollar v. Baker, 196 F.3d 603, 609 (5th Cir. 1999).  Moreover, punitive damages are unavailable under the ADA.  Barnes v. Gorman, 536 U.S. 181, 189-90 (2002).

Because plaintiff only seeks relief from defendants McBride, Horton, and Dostal in their individual capacities, he fails to state a valid cause of action against them under the ADA or RA as a matter of law.[5]

### 2. The Civil Rights Act

The Civil Rights Act of 1866 creates a private right of action for redressing the violation of federal law by those acting under color of state law.  42 U.S.C. § 1983; Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 82 (1984).  Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights conferred elsewhere.  Albright v. Oliver, 510 U.S. 266, 271 (1994).

Defendants Dostal, McBride, and Horton assert the defense of

---

5 While a suit for prospective injunctive relief may be available against state employees in their official capacity, plaintiff specifically states that he has not sued these defendants in their official capacities.

qualified immunity from plaintiff's Eighth claims for monetary damages against them in their individual capacities. (Docket Entry No.34). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Saucier v. Katz, 533 U.S. 194, 199-200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

"To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident." Waltman v. Payne, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted). The Court has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 818 (2009).

Prison officials violate the constitutional prohibition against cruel and unusual punishment when they demonstrate deliberate indifference to a prisoner's serious medical needs, constituting unnecessary and wanton infliction of pain. See Wilson v. Seiter, 501 U.S. 294, 297 (1991). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize the care is

required." <u>Gobert v. Caldwell</u>, 463 F.3d 339, 345 n.12 (5th Cir. 2006). To prevail on a claim of deliberate indifference to medical needs, the plaintiff must establish that the defendant denied him treatment, purposefully gave him improper treatment, or ignored his medical complaints. <u>Domino v. Texas Dep't of Criminal Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001). The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the prison officials were actually aware of the risk, yet consciously disregarded it. <u>Id.</u> at 837, 839; <u>Lawson v. Dallas County</u>, 286 F.3d 257, 262 (5th Cir. 2002). "[F]acts underlying a claim of 'deliberate indifference' must clearly evince the medical need in question and the alleged official dereliction." <u>Johnson v. Treen</u>, 759 F.2d 1236, 1238 (5th Cir. 1985). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." <u>Id.</u>

Plaintiff complains that Dr. McBride violated the Eighth Amendment by denying or delaying dental care by his strict adherence to two UTMB policies, *i.e.*, the "one-year non-emergency care policy" and the "no dentures policy." (Docket Entries No.29, No.45, No.46). Plaintiff learned of these two policies from the Jester III Unit Offender Unit Orientation Handbook ("the Handbook"), which plaintiff received when he arrived on the Jester III Unit on March 18, 2008.[6] (Docket Entry No.46, page 4). The

---

6 Plaintiff indicated his understanding of these policies in his first sick call request. (Docket Entry No.34-2, page 3). He also claims that Dental Assistant Owens told him at his first appointment on April 28, 2008, that he could not get a filling until he had been on the unit one year. (Docket Entry No.46-2, page

Handbook states the following, in pertinent part, with respect to inmate dental care:

> Dental care is provided on a voluntary basis. All offenders have equal access to care. Sick Call Request Forms are to be used to request dental care. . . . Dental services are provided according to a priority system. The dentist will determine the priority of treatment during a medical examination. A simple explanation of the priority system is that treatment of more urgent need is done first and then less serious conditions are addressed secondly.
>
>         *    *    *    *    *
>
> Offenders have the absolute right to refuse care or treatment.

(Docket Entry No.18-1, page 19). The Medical Department Offender Orientation handout attached to the Handbook states the following:

> Dental
>
> - 0-12 months incarceration – only emergency treatment
>
> - Beyond 12 months incarceration – eligible for all preventive care; pass plaque index, cleanings, fillings
>
> - Dentures are not issued any longer, but will maintain the ones you already have

(Docket Entry No.18-2, page 9).

The record shows that plaintiff was treated in accordance with the procedures outlined in the Handbook and that dental care was not delayed or denied. From April 30, 2008, to December 2, 2009, plaintiff saw Dr. McBride in the dental clinic at least eight times within a few days of submitting a sick call request. (Docket Entry

---

2). Plaintiff maintains that McBride added, without explanation, that "'[t]he current UTMB policy is no dentures.'" (Id.).

No.34-2, pages 4, 6, 9, 15, 23, 26, 41, 44). At each appointment McBride examined plaintiff's teeth, reviewed plaintiff's medical history, noted his weight and/or body mass index ("BMI"), and discussed plaintiff's concerns or instructed plaintiff on dental care. (Id. pages 4, 6, 9, 15, 23, 26, 41, 44). On two occasions, McBride noted that plaintiff reported no pain or discomfort from lost filings or broken teeth. (Id. pages 6, 23). He indicated on one occasion that plaintiff reported "lots of pain from healing bites due to back of dentures." (Id., page 15). McBride diagnosed the latter problem as an "ulcerated area/buccal vestibule"; he offered treatment, which plaintiff allegedly refused.[7] (Id., page 15). McBride indicated on each clinic note that plaintiff's priority treatment was a 2. (Id.,pages 4, 6, 9, 15, 23, 26, 41, 44).

McBride also provided plaintiff with non-emergency dental care even though plaintiff had been incarcerated in TDCJ-CID less than a year. On September 29, 2008, within nine months of plaintiff's re-entry into TDCJ-CID on December 17, 2007, McBride provided restorative treatment for two of plaintiff's teeth. (Docket Entries No.18, page 33; No.34-2, page 9).

Plaintiff's chief complaint to McBride throughout 2008 and 2009, however, was his need for dentures. (Docket Entries No.18, pages 23, 27, 29, 35, 47, 53; No.34-2, pages 3, 7, 13, 40). Citing

---

7 Plaintiff claims that he declined the silver nitrate treatment and requested a loose oral gel, which was denied. (Id.).

UTMB policy, McBride declined to recommend partial plate dentures for plaintiff.   McBride noted on three clinic visits that he explained to this policy to plaintiff.   (Docket Entry No.34-2, pages 4, 6, 43).

UTMB's "Dental Prosthodontic Services," Number E-36.4 of the Correctional Managed Health Care Policy Manual, instructs dentists to gauge the necessity for dentures as follows, in pertinent part:

I.    MEDICALLY NECESSARY PROSTHODONTICS

    A.    Dental prosthetics are provided when the health of the patient would otherwise be adversely affected.

    B.    Nutritional Status

        1.    Dentists should thoroughly review the patient's medical history.   Nutritional supervision is a critical component of the management of patients with chronic diseases such as heart disease, cancer, or diabetes.

        2.    Dentists should monitor the nutritional status of patients by tracking weight trends for those who may have compromised masticatory [chewing] function.  A review of the Body Mass Index (BMI) may be utilized as a tracking methodology.

            a.    * * * * *
               The BMI should be reviewed for those patients who are edentulous [without teeth], essentially edentulous, or who have fewer than seven occluding posterior teeth and have complaints regarding mastication [chewing].

            b.    A BMI from 18.5 to 25 is considered normal. Patients with a BMI of 25 or lower which is trending downward or a patient 10% or more underweight relative to their ideal body weight should be referred to the patient's treating physician for consultation.

       c.    If the patient's physician determines that the patient's nutritional status is compromised, special diets such as a mechanically blended diet should be considered. Patients should be compliant with all diet recommendations.

C.    Dental prostheses for those patients with compromised masticatory [chewing] function should also be considered following initiation and follow-up of the effectiveness of the special diet.

D.    * * * * *

It should be kept in mind, however, that most foods are quite easily digested with minimal mastication [chewing] and there is little likelihood that dentures will ameliorate pre-existing gastro-intestinal problems according to current dental literature.

(Docket Entry No. 34-9, Exhibit H.)

Defendant Billy Horton, the Director of Dental Services for UTMB-CMC, attests to plaintiff's eligibility for dentures under the policy, as follows in pertinent part:

UTMB-CMC dentists are instructed that the BMI (Body Mass Index) should be reviewed as a tracking methodology for those patients who are edentulous (without teeth) or essentially edentulous (no posterior teeth in occlusion) or who have fewer than seven occluding posterior teeth and have complaints regarding mastication.

Mr. Hay's dental records indicate at the time I prepared my response, he has 12 of his original 32 teeth (including wisdom teeth) and that his BMI was 25. Based on the CMC Dental policy, dental prosthodontics were not medically necessary. This determination is based on the patient's overall health rather than his reported problems with chewing. Any dentist or physician determining that an inmate has a special need for prosthodontics, may submit a request to the CMC Dental Utilization Review Committee.

* * * * *

> In this instance, the unit dentist never indicated that
> there was a medical need for dentures, so the process
> never moved beyond the facility.

(Docket Entry No.34-7, pages 3-4).   The record reflects that

plaintiff understood the policy.[8]   (Docket Entry No.18, page 47).

The record shows that in June 2004, plaintiff weighed 172

pounds and had a BMI of 26.   (Docket Entry No.34-5, page 19).   When

plaintiff re-entered the prison system in 2007, his reported weight

was 150 pounds and BMI was 23.   (Id.).   He maintained his weight

around 154-155 pounds and a BMI of 23 to 24 until late January

2009, when his weight increased to around 170 pounds and his BMI to

26.   (Id.).

In his affidavit submitted in support of the motion for

summary judgment, Brian Tucker, D.D.S., a dentist for thirty-one

years and Regional Dental Director for the Texas Tech Managed

Correctional Health Care for sixteen years, attests to the quality

of treatment plaintiff received at the Jester III Unit from his

review of plaintiff's medical records, as follows, in pertinent

part:

> Patient's dental health was improved by the dental
> treatments he received; he did not suffer harm.   His
> decayed teeth were restored.   He complained of choking,
> was evaluated and referred for a barium swallow, which
> patient refused, stating his problem "went away and
> hasn't bothered me since."   He complains of sores and

---

8 Plaintiff indicated in a sick call request dated August 1, 2009, that he wanted
to discuss "medical necessity" for dentures with McBride and that McBride had
informed him that it was the policy that stopped plaintiff from getting the
partial plates.   (Docket Entry No.18, page 47).   Plaintiff indicated that the
policy stated that if Unit dentist recommended dentures as medically necessary,
the recommendation would be referred to the dental utilization quality committee
for approval.   (Id.).   Plaintiff asked who was on the committee.   (Id.).

> does apparently have recurrent aphthous ulcers for which he as been appropriately treated.   When he got an abscessed tooth, he was evaluated and treated with medication but refused definitive treatment.
>
> I can testify that the standard of care requiring treatment for serious medical conditions has been met.

(Docket Entry No.34-8, Exhibit G).   The record supports this portion of Dr. Tucker's attestation regarding plaintiff's dental care.   (Docket Entry No.34-2).

The record reflects no probative summary judgment evidence that Dentist McBride failed to follow the established written dental policy or that he acted with deliberate indifference to plaintiff's serious medical needs by following the same.   He monitored plaintiff's BMI, reviewed plaintiff's medical records, and addressed the dental issues presented.   Although plaintiff claims that he suffers from chronic illnesses, which require that he receive proper dental care (Docket Entry No.29, page 8), the record does not reflect that plaintiff suffered any serious medical condition from the lack of dentures or from the dental care he received.

An inmate does not have a constitutional right to the treatment of his choice.   See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) (citing Ruiz v. Estelle, 679 F.2d 1115, 1150 (5th Cir.), vacated in part as moot, 688 F.2d 266 (5th Cir. 1982).   Mere disagreement with prison medical providers about what constitutes appropriate care does not rise to the level of a constitutional violation.   "So long as the treatment given is adequate, the fact

14

that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) (recognizing a cognizable claim regarding inadequate dental care can be based on various factors including severity of condition).

With respect to plaintiff's monetary claims against defendants Horton and Dostal, the law provides that a supervisory official "may be held liable if there exists either (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987). The summary judgment record reflects that Dostal and Horton were aware of plaintiff's request for dentures,[9] but no evidence that they failed to follow the established policy or that

---

9 In response to Step 1 Grievance No.2009212927, dated September 22, 2009, Dostal explained that plaintiff's weight gain reflected no negative impact or nutritional difficulties from his dental condition and that he did not qualify for prosthodontic treatment under policy. She advised him to write defendant Horton. (Docket Entry No.34-6, page 6).

In a handwritten response to a letter dated November 30, 2009, in which plaintiff complained that McBride had never given him a definitive answer as to whether he would recommend dentures but only cited policy, defendant Dostal responded, as follows:

> You do not meet the criteria according to current policy, to receive dentures. Dr. McBride did what was right and submitted your request to Dr. Horton, Dental Director and he has not responded yet. The only other option you have right now is a blended diet.

(Docket Entry No.34-2, page 47).

Dentist Horton avers that he responded to plaintiff's letter on January 28, 2010, wherein he informed plaintiff that CMC Policy E-36.4 indicates the availability of dental prosthodontics when it is determined to be medically necessary. (Docket Entry No.34-7, page 2). Horton further avers that the unit dentists did not indicate a medical need for dentures so the process did not move beyond the facility. (Id., page 4).

they were deliberately indifferent to plaintiff's serious medical needs. Viewing this record in the light most favorable to plaintiff, the evidence does not present a genuine issue of material fact that any of defendants McBride, Dostal, and Horton was personally indifferent to plaintiff's condition.

Moreover, defendants McBride, Dostal, and Horton are entitled to qualified immunity on plaintiff's Eighth Amendment claims because they did not engage in conduct that violated a constitutional right that was clearly established at the pertinent times in this lawsuit; that is, the competent summary judgment evidence does not support a conclusion that defendants' conduct was objectively unreasonable in light of the legal rules that were clearly established at the time of their actions. This Court has found no case law in this Circuit requiring prison officials to provide dentures to inmates who ask for them, nor has the Fifth Circuit found unconstitutional the policy under which defendants acted. The failure of defendants to prescribe dentures cannot be viewed as objectively unreasonable in light of their professional judgment that dentures were not medically necessary. Accordingly, plaintiff fails to defeat defendants' defense of qualified immunity with respect to his Eighth Amendment claims against them for monetary damages. Defendants' motion for summary judgment is granted as to these claims.

16

Plaintiff also seeks a preliminary and permanent injunction enjoining defendants from applying UTMB's dental policy to him and from failing to take impressions of his teeth and to make upper and lower partial plates.  (Docket Entry No.29, page 13).  Because plaintiff's request for equitable relief is predicated upon a viable Eighth Amendment claim against defendants Dostal, McBride, and Horton in their individual capacities, his request for such relief is denied.

### B. Official Capacity Claims

### 1. The Civil Rights Act

Plaintiff seeks relief only from TDCJ-CID Director Rick Thaler in his official capacity as successor to Nathaniel Quarterman, and no other defendant. (Docket Entry No.29).  Defendants move for summary judgment on plaintiff's claims for monetary relief against Thaler and any other defendant in his or her official capacity pursuant to the Eleventh Amendment.  (Docket Entry No.34). Plaintiff's claims for monetary damages from any defendant in his or her official capacity as an employee of the State of Texas are barred by the Eleventh Amendment, and these claims are dismissed. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Oliver v. Scott, 276 F.3d 736, 742, 742 (5th Cir. 2002).

The Eleventh Amendment, however, does not bar a claim for prospective relief.  See Ex parte Young, 209 U.S. 123 (1908); Green

v. Mansour, 474 U.S. 64, 68 (1985).  The Ex parte Young exception
only applies when the named defendant state official has some
connection with the enforcement of the act and "threaten and are
about to commence proceedings to enforce the unconstitutional act.
Okpalobi v. Foster, 244 F.3d 405, 416 (5th Cir. 2001).  Because the
real party in interest in an official-capacity suit is the
governmental entity and not the named official, the entity's
"policy or custom" must have played a part in the violation of
federal law.  Hafer v. Melo, 502 U.S. 21, 25 (1991) (quoting Monell
v. Dept. of Social Servs. of New York, 436 U.S. 658, 694 (1978)).

Defendant Thaler is the Director of TDCJ and not an employee
of UTMB, which is a separate state entity.  The policy at issue in
this case was developed by UTMB-CMC and implemented by employees of
the same.  (Docket Entry No.34-9, Exhibit H).  The record does not
show that defendant Thaler had any connection with the development
or implementation of the UTMB dental policy.   Accordingly,
plaintiff's claims for monetary damages and injunctive relief
pursuant to 42 U.S.C. § 1983 against defendant Rick Thaler are
barred by the Eleventh Amendment.

Plaintiff's § 1983 claims for damages or injunctive relief
against UTMB are also barred by the state's sovereign immunity.
Governmental entities are not "persons" within the meaning of §
1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71
(1989).  Moreover, the State of Texas has not waived its sovereign

immunity to suit in federal court for § 1983 claims. *See* Aguilar v. Tex. Dep't of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998). Accordingly, plaintiff's claims for injunctive and monetary relief against UTMB are subject to dismissal under 28 U.S.C. § 1915A(b) (providing that court may dismiss the complaint or any portion thereof, if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief).

## 2. The Americans with Disabilities Act

Plaintiff also seeks relief from UTMB on grounds that it has violated the ADA and the RA by denying him partial plate dentures. The ADA provides that "[a] State shall not be immune under the eleventh amendment . . . from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. The Supreme Court has accepted this provision as an unequivocal expression of Congress's intent to abrogate state sovereign immunity. United States v. Georgia, 546 U.S. 151, 154 (2006). However, when faced with the specific issue of whether a disabled inmate in a state prison may sue the State for money damages under Title II of the ADA, the Supreme Court has held that, "insofar as Title II creates a private cause of action for damages against States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."

19

Id. at 159 (emphasis in original).  Because Title II prohibits a wider range of activities than the Constitution, courts are to consider the following "on a claim by claim basis" in determining whether sovereign immunity is abrogated:

1.   Which aspects of the State's alleged conduct violated Title II;

2.   To what extent such conduct also violated the Fourteenth Amendment [or Constitution]; and

3.   Insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment [or Constitution], whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

Id.  To the extent that sovereign immunity is abrogated, the ADA provides for compensatory damages only upon a showing of intentional discrimination on the basis of disability.  *See* Delano-Pyle v. Victoria County, Texas, 302 F.3d 567, 575 (5th Cir. 2002).

Assuming without deciding that plaintiff has stated a *prima facie* ADA and RA claim, the Court finds that plaintiff is not entitled to equitable or compensatory relief from defendant UTMB because the summary judgment record does not show that the State of Texas through UTMB has violated the Eighth Amendment, as applied to the states through the Fourteenth Amendment, by its application of the denture policy to plaintiff or by the violation of any other constitutional right.  Therefore, the ADA and RA cannot abrogate UTMB's sovereign immunity in this case.  Accordingly, plaintiff's

claims against UTMB are subject to dismissal pursuant to 28 U.S.C. § 1915A(b).

### III. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1.  Plaintiff's motions for summary judgment (Docket Entries No.45, No.46) are DENIED.

2.  Plaintiff's claims against the University of Texas Medical Branch are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915A.

3.  Defendants' motion for summary judgment (Docket Entry No.34) is GRANTED. All claims against defendants Belvis McBride, Susan Dostal, Billy Horton, and Rick Thaler are DENIED.

4.  This civil action is DISMISSED WITH PREJUDICE.

5.  All other motions are DENIED.

The Clerk will provide copies to the parties.

SIGNED at Houston, Texas, on _March 7_, 2011.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

21